BECKER v. PARTRIDGE.

1. EQUITY — BANKRUPTCY — FRAUDULENT   CONVEYANCES — SETTING
   ASIDE CONVEYANCES—BILL IN AID OF EXECUTION.
      Trial court properly denied motion to dismiss bill to set aside
      conveyances of real estate as a bill in aid of execution where
      plaintiff, as trustee of bankrupt's estate, stands in the place
      of a judgment creditor who had caused a writ of *fieri facias*
      to be issued and levied on the bankrupt's real estate previous
      to plaintiff's appointment.

2. FRAUDULENT CONVEYANCES—NOMINAL TITLE HOLDERS—STATUTE
   OF LIMITATIONS—EQUITY.
      Transferees' motion to dismiss bill by trustee in bankruptcy to
      set aside transfers of real estate to bankrupt and his wife
      was properly denied as to certain parcels where wife acquired
      her interest within six years previous to suit and holders of
      title were merely nominal title holders, as equity will look
      through the subterfuge of deeding the property to others in
      order to reach the real parties in interest and statutes of
      limitation, applied by analogy in equity, do not strictly con-
      trol the question as to whether an action is barred in chancery
      by laches or estoppel (3 Comp. Laws 1929, § 13976, as
      amended by Act No. 72, Pub. Acts 1941).

3. BANKRUPTCY — FRAUDULENT  CONVEYANCES — EQUITY — JURISDIC-
   TION.
      Since a bankrupt's interest in property passes to the trustee in
      bankruptcy, the chancery court has jurisdiction in the trustee's
      suit to set aside transfers of property by the bankrupt to
      determine the validity of such transfers.

4. SAME—FRAUDULENT CONVEYANCES—INSOLVENCY—INTENT TO DE-
   FRAUD CREDITORS.
      Conveyances for which consideration was furnished by bank-
      rupt which resulted in title being placed in bankrupt and
      his wife while he was insolvent, as disclosed by evidence,

including financial statements presented to receiver of bank to which he was greatly indebted, *held*, to have been made with intent to hinder, delay and defraud his creditors (3 Comp. Laws 1929, §§ 13393–13396).

Appeal from Oakland; Toms (Robert M.), J., presiding. Submitted January 5, 1944. (Docket No. 28, Calendar No. 42,462.) Decided May 17, 1944.

Bill by Ralph Becker, trustee in the matter of Edward M. Stout, a bankrupt, against Ward Partridge and others to set aside transfers of real estate and for an accounting and an injunction. Decree for plaintiff. Defendants Stout appeal. Affirmed.

*Benjamin D. Jaffe* and *Carleton H. McIntyre* (*Aaron Weiswasser*, of counsel), for plaintiff.

*Glenn C. Gillespie*, for defendant Grace Stout.

*Walter J. McAloon*, for defendant Edward M. Stout.

BOYLES, J. On March 31, 1941, a petition in bankruptcy was filed against Edward M. Stout; on September 25, 1941, he was adjudged a bankrupt; and on October 31, 1941, Ralph Becker, plaintiff and appellee, was appointed as the trustee in bankruptcy. On April 1, 1942, the trustee filed the present suit in chancery to set aside certain conveyances of real estate to the defendants herein on the ground that Edward M. Stout was insolvent at the time they were executed and delivered and that they were executed and delivered with intent to hinder, delay and defraud his creditors. The bill of complaint also asked for an accounting, and an injunction to restrain the defendants from encumbering or disposing of the real estate in question. The bill of

complaint was taken as confessed by defendants Ward and Allene Partridge who did not appear or answer. The case was heard in open court as against defendants Edward M. Stout and his wife, Grace Stout. The court filed an opinion finding that Stout was insolvent at the time the conveyances were executed and delivered, that the conveyances were made with intent to hinder, delay and defraud the creditors of Edward M. Stout within the meaning of the fraudulent conveyance act, and were null and void. From a decree entered in accordance with the opinion, defendants Edward M. Stout and Grace Stout appeal.

Two questions secondary to the main issues are raised by appellants:

(1) Should the bill of complaint be dismissed as a bill in aid of execution? The suit has a secondary aspect as a bill in aid of execution in that the trustee claims to be a judgment creditor of Stout. One of the creditors represented by the trustee in bankruptcy is Hugh A. McPherson, receiver of the Pontiac Commercial & Savings Bank. The receiver had obtained a deficiency decree against Stout in a mortgage foreclosure suit in chancery, the decree being entered in favor of the Reconstruction Finance Corporation which at that time held an assignment of the assets of the bank as security for a loan. Subsequently, and before plaintiff was appointed trustee, the bank paid off the Reconstruction Finance Corporation loan and obtained reassignment of all its remaining assets, including the deficiency decree. The deficiency was not paid by Stout and the receiver caused a writ of *fieri facias* to be issued and levied on Stout's real estate. McPherson, as receiver, succeeded to all the rights of the Reconstruction Finance Corporation. Plaintiff, as trustee in bankruptcy, stands in place of the receiver who was

the real party in interest in the attempt to collect the deficiency from Stout. Defendants' motion to dismiss the bill of complaint as a bill in aid of execution was properly denied. The chancery court, having jurisdiction over the main issues in the case, may grant the incidental relief essential to an effective disposition of the entire matter.

(2) Appellants claim that the suit is barred by the statute of limitations * as to three certain parcels of real estate involved. The Partridges paid no consideration for two of these parcels deeded to them by Mr. Stout in 1935, and in 1937 conveyed them to Grace Stout, wife of Edward M. Stout. Ward and Allene Partridge did not contest this suit, and Ward, testifying, admitted that he was merely a nominee in the transaction ''through some arrangement between Mr. and Mrs. Stout,''—also ''Well, I knew I was acting—we were acting simply as nominee and that they were to be reconveyed to Mrs. Stout as it was my understanding.'' Grace Stout testified that when Mr. Stout deeded these parcels to Partridge she ''wasn't quite satisfied with the property *  *  * at the time Mr. Partridge took this property over for me I wasn't quite satisfied.'' All four of these parties are before the court. Grace Stout acquired the title within the six-year period during which the cause of action is not barred. Equity will look through the subterfuge of deeding the property to the Partridges to reach the real parties in interest. A somewhat similar situation arose as to parcel 68— a vacant lot, in which title was apparently taken by the Partridges in 1935 and paid for with $50 furnished by Mr. Stout. The deed from the grantors to the Partridges was not acknowledged or recorded,

* See 3 Comp. Laws 1929, § 13976, as last amended by Act No. 72, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 13976, Stat. Ann. 1943 Cum. Supp. § 27.605).—REPORTER.

and later the Partridges gave a deed of the parcel to the Stouts. Defendants' motion to dismiss as to these parcels on the ground that the suit was barred by the statute of limitations was denied. We are in accord. Whatever interest Edward M. Stout had (if any) in these parcels passed to the trustee in bankruptcy, and the court has jurisdiction in chancery to determine the validity of the transfers. While statutes of limitation by analogy apply in equity, they do not strictly control the question as to whether an action is barred in chancery by laches or equitable estoppel.

The controlling issues in this case are (1) whether Edward M. Stout was insolvent within the meaning of the fraudulent conveyance act (3 Comp. Laws 1929, §§ 13393–13396 [Stat. Ann. §§ 26.882–26.885]) when the conveyances in question were made during the years from 1935 to 1938; and (2) were they made with intent to hinder, delay and defraud his creditors? The first is a question of fact, and the second is a conclusion to be drawn from the facts.

Stout had been a resident of the city of Pontiac for many years, married defendant Grace Stout in 1898, was in the business of buying and selling real estate during the period of the rapid growth and expansion of Pontiac as an industrial center. He acquired title and interests in a large number of parcels of real estate, both in his own name and in the names of business associates and partners. Prior to the closing of the Pontiac Commercial & Savings Bank and the appointment of Hugh A. McPherson as receiver in 1931, Stout was an extensive borrower of this bank in his own name, and in conjunction with business associates. Such borrowings were evidenced by indirect liabilities, where Stout discounted notes to the bank on his indorse-

ment, by direct liabilities evidenced by his note as maker, and by mortgage loans evidenced by notes secured by mortgages.

Beginning in 1926 Stout maintained a bank account with the Pontiac Commercial & Savings Bank in the name of Edward M. Stout and Grace Stout, his wife. This was the only account Edward Stout as an individual, or Edward Stout and Grace Stout jointly, had at any time and was used as a depository of funds derived from Stout's individual business dealings as well as for all funds derived by Edward M. Stout and Grace Stout in their alleged joint dealings. Between 1927 and 1931 this account received the proceeds of bank loans made to Edward M. Stout individually in the sum of $99,690.78. In addition, numerous proceeds of indirect loans to Edward M. Stout were deposited in the bank account during the same period. Prior to 1931 Edward M. Stout acquired interest in many parcels of property and few parcels, if any, were acquired in the name of Grace Stout or Edward M. Stout and Grace Stout by entireties. No separate books and records or bank account was kept on the few parcels which were in the names of Stout and his wife. Mr. Stout had the management of these properties and bank account, with full authority to act therein. Mrs. Stout testified that she at no time ever had a separate estate, contributed nothing to the real estate venture through her own efforts, acquired nothing by inheritance, and knew little or nothing of the details of her husband's business. She never had any moneys in a separate bank account prior to 1931, and in 1931 did not know how much money, if any, she had in the joint account, nor did she know her net worth individually or jointly at that time. Any interest she later acquired in property owned by her husband was without consideration from her. She was the

housewife, not the business woman. On June 13, 1931, when Hugh A. McPherson was appointed receiver for the Pontiac Commercial & Savings Bank, Stout's indebtedness to the bank amounted to $149,096.58. This indebtedness did not include indebtedness on mortgage loans held by the mortgage department of the bank.

After 1931 Edward M. Stout did not acquire or take title to any property *in his own individual name.* Certain partnership or joint business associations were dissolved subsequent to 1931 and the title to the interests of his associates was transferred to the names of Edward M. Stout and Grace Stout, his wife, by entireties, Grace Stout individually, or to Ward Partridge and/or Allene Partridge, son-in-law and daughter of Edward M. Stout, notwithstanding that at such time large borrowings of such partnership or joint business association and individual borrowings of Stout remained outstanding and unpaid to the Pontiac Commercial & Savings Bank.

The indebtedness of Edward M. Stout to the Pontiac Commercial & Savings Bank increased from $149,096.58 in June, 1931, to $169,634.80 in November, 1934. After 1931 all newly-acquired titles or interests in properties were taken in the names of Edward M. Stout and Grace Stout by entireties, Grace Stout, or in the names of Ward Partridge and/or Allene Partridge, his wife.

Edward M. Stout in 1931 was in default on many of his individual obligations. The mortgage liability or encumbrances covering Edward M. Stout's properties in 1931 amounted to $130,491.56. This indebtedness continually increased after 1931 and ultimately resulted in a loss of the properties through foreclosure. He was in default in taxes in 1931 in the sum of $33,480.12. This default increased to $56,082.56 in 1934. Ultimately many of

such properties were lost to the State of Michigan by tax sale, in November, 1939. The entire liability of Edward M. Stout in 1931, as determined, was approximately $313,048.08, composed of his bank liability, mortgage liability, tax delinquency. The title to a large number of parcels of property was transferred to Grace Stout between 1931 and 1934. After the petition in bankruptcy was filed in 1941 the properties listed by Stout in his bankruptcy schedules amounted only to about $16,000. On May 6, 1936, Edward M. Stout filed a sworn financial statement with the first National Bank of Pontiac wherein he showed that he was insolvent. This statement showed his properties at an estimated value of $119,680 and his liabilities at $181,534.04. On April 4, 1938, Edward M. Stout gave a sworn financial statement to the Pontiac Commercial & Savings Bank which again reflected complete insolvency. This statement disclosed properties of an estimated value of $18,650 and liabilities of $121,336.37.

Approximately 700 record pages of testimony were taken to show whether Mr. Stout was insolvent. No satisfactory objective can be accomplished by any lengthy statement of the many financial transactions indulged in by Mr. Stout, or the varying estimates as to the values of his property and the extent of his indebtedness. Accepting his own sworn financial statements filed with the two bank creditors in 1936 and 1938, he was admittedly insolvent. His counsel now seek to convince that these were false statements.

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." 3 Comp. Laws 1929, § 13393 (Stat. Ann. § 26.882).

The circuit judge in a lengthy opinion tabulated and reviewed the testimony and reached the conclusion that Stout was insolvent. In so doing, the trial court did not include as a part of Stout's assets the property that had been hidden in the name of Partridge and wife. The conclusion of the trial court that Stout was insolvent when the conveyances in question were executed is fully supported by the testimony. The conduct of Mr. Stout in financial matters was not consistent with the conduct of one who believes himself solvent. The record is convincing that the conveyances in question were made with intent to hinder, delay and defraud his creditors.

The decree is affirmed, with costs to appellee.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.