## KRANZ v. KRANZ.

1. APPEAL AND ERROR—FINDING OF TRIAL COURT—EVIDENCE—WIDOW'S CLAIM AS TO PERSONALTY.

In widow's suit for partition against some of her seven children, testimony supported trial court's finding that the personal property which was on the farm at time of the father's death was not actually sold by the mother but claimed by her when she paid claims and expenses from her own funds pursuant to an agreement with all of the children.

2. SAME—PREPARATION OF RECORD.

It is incumbent upon an appellant to prepare a record on appeal.

3. SAME—FINDINGS OF TRIAL COURT—RECORD.

In suit for partition, brought by widow against some of her seven children, where appellant did not deem it necessary to incorporate probate court records in record on appeal, Supreme Court, on *de novo* review, accepts findings of trial court based thereon and assumes that his deductions and inferences from the probate records and exhibits, as expressed by him, are correct.

4. PARTITION—AUCTION—DIVISION OF PROCEEDS—EQUITY.

In suit for partition, brought by widow against appellant son and others, finding of trial court that after payment of some debts that the mother was entitled to 43/80 of proceeds of auction of personalty and appellant was entitled to 37/80 thereof *held*, equitable under the circumstances.

REFERENCES FOR POINTS IN HEADNOTES

[2] 3 Am. Jur., Appeal and Error, § 568.
[3–5] 3 Am Jur., Appeal and Error, § 954.
[5] 22 Am. Jur., Fixtures, § 63.
[6, 7] 40 Am. Jur., Partition, § 36.
[7] 19 Am. Jur., Equity, § 127.

5. SAME—FIXTURES—FINDING OF TRIAL COURT.

Trial court's finding that 12′ x 16′ white pine garage, supported by cement blocks, and 10′ x 12′ engine house, setting on the ground, were not movable fixtures, as claimed by defendant in partition suit *held*, proper.

6. SAME—ACCOUNTING—JURISDICTION OF EQUITY—COMPLETE DISPOSITION.

In a partition suit involving a farm the court of equity has jurisdiction to decree a division of personalty thereon so as to give incidental relief of accounting, essential to an effective disposition of the entire matter.

7. EQUITY—JURISDICTION.

A court of equity which has jurisdiction of the principal feature of a case, such as partition, has general equity cognizance and jurisdiction for the purpose of full and final adjustment of the entire controversy.

Appeal from Ingham; Eger (Paul G.), J. Submitted January 12, 1949. (Docket No. 53, Calendar No. 44,179.) Decided February 28, 1949.

Bill by Ida Kranz against Carl Kranz and others for partition of real estate and sale of personalty and division of proceeds. Decree for plaintiff. Defendant Carl Kranz appeals. Affirmed.

*Benjamin F. Watson,* for plaintiff.

*John Wendell Bird,* for defendant.

BUTZEL, J. The record indicates that in November, 1914, or thereabouts, Gustave Kranz of Delhi township, Ingham county, Michigan, died intestate leaving as his heirs, Ida Kranz, his wife, the plaintiff and appellee, referred to herein as the mother, and 3 daughters and 4 sons. A son Carl, the sole appellant, and the three daughters are defendants in this action. The interest of the other three sons in the estate of the father has been acquired by the mother.

The estate consisted of a 120-acre farm with the homestead and buildings thereon, and also personal property consisting of the live stock, farm implements and machinery. The inventory of this personal property, valued at $1,465.01, was filed in the probate court. According to the findings of the trial judge, the probate court's order assigning the residue shows that the mother as administratrix had disbursed the whole of the $1,465.01 to pay the claims and expenses of the estate. The probate court's orders are not in the record before us. The testimony, however, supports the finding of the trial judge that the personal property was not actually sold but the mother claimed it as her own when she paid the claims and expenses from her own funds. There is testimony that this was in accordance with an agreement with all the children, although appellant Carl denies it. Carl's interest, as an heir, in the personal property was less than 10 per cent. Evidently he made no objection at the time the mother took over the personal property and it was used and replaced, at least to a certain extent, during the years that ensued after the father's death. The real estate was assigned one-third to the mother and two-thirds to the 7 children by the probate court. After acquiring the interest of 3 of the children in the real estate, the mother owns a 13/21 interest in the real estate, while Carl and the other defendants each own a 2/21 interest.

After the death of the father, Carl and his brother Walter remained with the mother on the farm which they operated and divided the proceeds, half to the mother, and one-fourth to each of the brothers. In 1917, Carl joined the army during the First World War and was discharged in May, 1919. He thereafter lived at the farm but for a while worked for others. While he claims this was only for a period of 2 years, the testimony also indicates that it was

not until 1925 before he again worked continuously on the farm. In 1925, Walter disposed of his interest in the farm and left Carl and the mother to run it. They shared the proceeds equally, apparently without any formal written agreement for a period of over 20 years and until shortly prior to the beginning of this suit in 1946.

The suit is brought by the mother for the partition of the real estate. Shortly prior to its institution, during an altercation, Carl had inflicted severe injuries on his mother. He was arrested, pleaded guilty to an assault, and served a jail sentence of 90 days. The mother, who was over 80 years of age, was taken to a hospital and then went to live with one of her other children. After the altercation the personal property, except for certain items belonging to Carl, was sold at auction. The mother also seeks a division of the proceeds of this sale between herself and Carl. There seems to be no dispute over the partition of the real estate and the sale and division of the proceeds from its sale, as decreed by the trial court, is not objected to. The dispute arises over the division of the proceeds from the auction sale of the personal property, from which $4,511.54 was realized and deposited for safekeeping as follows: $2,084.80 with the mother's attorney and $2,426.74 with Carl's attorney. The court decreed that from the total amount there be deducted $333 to pay some debts and the balance be divided 43/80 to the mother and 37/80 to Carl. From this decree Carl has appealed.

We are confronted with a most unsatisfactory record. It was incumbent upon the appellant to prepare the record. While there are references to probate records and exhibits consisting of lists purporting to show what each party claimed to be his or her sole properties, they have been omitted from the record. We must accept the judge's findings and as-

sume that his deductions and inferences from the probate records and exhibits, as expressed by him, are correct, as appellant does not deem it necessary to incorporate them in the record. We have this in mind as well as the fact that the judge had the advantage of seeing the witnesses, in considering the case *de novo*. The judge stated that the exhibits and proofs in regard to the personal property were scanty, so that the best he could do was to endeavor to reach some equitable result and terminate the controversy. We fully agree with the judge's observations and believe he came to the correct conclusion.

Appellant claims that when he finally returned to the farm to work it and share the proceeds, he had saved $4,000 and also received a government bonus of $1,500, a large part of which, the exact amount not being shown, he claims was used on the farm. He claims that he did most of the work on the farm although his mother did some farm work and looked after the housework. The record contains no list of the expenditures alleged to have been made by him. The proceeds from the farm were to be divided equally and at least some of it went back into the farm. During this time Carl bought 2 cars for himself, a Dodge, and also a Pontiac, which he concedes is still at the farm. He also bought a team of horses which he stated was in his possession. He conceded that he used some of his money for drink, some was lost or stolen, the largest sum so lost he claims to have been $50. There is no inventory of the livestock, farm machinery and implements on the farm at the time Carl finally did return, though whatever was left after the father died with replacements, if any, must have been there, as the farm was being operated at the time. The mother stated that she bought some of the tools and stock on the farm from the proceeds of the operation of the farm after Carl

returned. Carl admits his mother did buy some of this personal property. We believe the testimony fully warrants the judge's finding that the mother had acquired all the personal property on the farm at the time Carl returned to live and work on the farm. Bearing in mind the superior position of the trial judge, both as to the exhibits and the credibility of witnesses, we believe he reached an equitable result in decreeing the division of the proceeds of the personal property.

Appellant claims ownership of two portable buildings on the farm, that he built: One a garage 12 x 16 feet, built of white pine and standing on cement blocks; the other an engine house, 10 x 12 feet, setting on the ground. He claims that they were built with the idea that they could be moved by him and without any intention of attaching them to the farm. The engine house, which the appellant refers to in his brief as a shed, is over 40 years old, the garage is approximately 25 years old. Carl testified that when he built the garage he planned to leave it there. That does not indicate an intention to move the buildings. Irrespective of the fact that the value of these old buildings must be exceedingly small after all these years, the judge properly held that they were not movable fixtures.

Appellant on this appeal raises the further question that equity had no jurisdiction to decree a division of the personalty. A proper division could only be determined by an accounting even though very informal. This question seems to have been an afterthought on the part of plaintiff, for it was not made in the pleadings, at the hearing, or in his reasons and grounds for appeal. In addition, there is no merit to it even were we to consider it at this time. This is particularly a suit in equity to partition real estate and properly within the jurisdiction of a court of equity. Having thus acquired general

jurisdiction over the main issue the court will retain it to dispose of all the other questions between the parties, so as to give incidental relief essential to an effective disposition of the entire matter. *Becker* v. *Partridge,* 309 Mich. 46. It is proper for an equity court to determine the disposition of a fund on the winding up of a partnership or joint adventure. Equity had jurisdiction of the principal feature in the case and, therefore, had general equity cognizance and jurisdiction for the purpose of full and final adjustment of the entire controversy. *Bartos* v. *Czerwinski,* 323 Mich. 87.

We have carefully examined other minor claims of appellant but find they are not of sufficient merit to require discussion.

Decree affirmed, with costs to appellee.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.